GELDON, Respondent, vs. FINNEGAN and another, imp., Appellants.

*December 5, 1933—January 9, 1934.*

543

For the appellants there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, attorneys for appellant Finnegan, and *Grady, Farnsworth & Walker* of Portage, attorneys for appellant Schaumburger, and oral argument by *Mr. Daniel H. Grady* and *Mr. Messerschmidt.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

ROSENBERRY, C. J. The principal contention made here is that the fire marshal and his deputies are quasi-judicial officers and are not liable for acts performed by them in the course of the discharge of their official duties, which involve a certain amount of discretion, so long as they act within their jurisdiction. A determination of the question raised requires a consideration of the statutes, secs. 200.19 to 200.21, the material parts of which are printed in the margin.[1]

[1] 200.19 *Fire causes; investigation; report.* (1) The state fire marshal . . . shall investigate or cause to be investigated the cause, origin and circumstances of every fire occurring in such . . . town by which property has been destroyed or damaged when the damage exceeds twenty-five dollars; except that all fires of unknown origin shall be reported, and shall especially make investigation as to whether such fire was the result of carelessness, accident or design.

(2) Such investigation shall be begun within two days of the occurrence of such fire, and the state fire marshal shall have the right to supervise and direct such investigation whenever he deems it expedient or necessary.

200.20 *Arson; prosecution; attorney's duties.* (1) The state fire marshal shall, when in his opinion further investigation is necessary, take or cause to be taken the testimony on oath of all persons supposed to be cognizant of any facts or to have any means of knowledge in relation to the matter as to which an examination is herein required to be made, and if he shall be of the opinion that there is evidence sufficient to charge any person with the crime of

It is the contention of the defendants that the deputy fire marshal, Finnegan, under the last clause of sec. 200.21 (1), was empowered to do what he did do in the matter of detaining plaintiff. That clause provides:

"All investigations held by or under the direction of said state fire marshal, or his subordinates, may, in his discretion, be private, and persons other than those required to be present by the provisions of this act, may be excluded from the place where such investigation is held, and witnesses may be kept separate and apart from each other, and not allowed to communicate with each other until they have been examined."

It is also provided by sec. 200.20 that if the deputy fire marshal is of opinion that there is evidence sufficient to charge any person with the crime of arson, "he shall cause such person to be arrested and charged with such offense," etc. The provision of the law conferring upon the state fire marshal and his deputies the power to investigate and during the course of the investigation to exclude from the place where the investigation is held, any persons, and to keep the witnesses separate and apart from each other and not allow them to communicate with each other, is an attempt to con-

arson, he shall cause such person to be arrested and charged with such offense, and shall furnish to the proper prosecuting attorney all such evidence, together with the copy of all names of witnesses and all the information obtained by him, including a copy of all pertinent and material testimony taken in the case.

200.21 *Fire marshal; inquisitions; inspections.* (1) The state fire marshal . . . and deputy state fire marshals shall each have the power in any county of the state of Wisconsin, to summon and compel the attendance of witnesses before them, or either of them, to testify in relation to any matter which is by the provisions of this act, a subject of inquiry and investigation, and may require the production of any book, paper or document deemed pertinent thereto by them or either of them. Such witness shall be subpœnaed in the same manner as witnesses in circuit court. . . . All investigations held by or under the direction of said state fire marshal, or his subordinates, may, in his discretion, be private, and persons other than those required to be present by the provisions of this act, may be excluded from the place where such investigation is held, and witnesses may be kept separate and apart from each other, and not allowed to communicate with each other until they have been examined.

fer upon them the powers conferred upon an examining magistrate by sec. 361.14. This power of excluding witnesses when exercised by a court is frequently referred to as the power of the court to put the witnesses under a rule and is a power which may be exercised by the court at its discretion. *Benaway v. Conyne,* 3 Pin. 196 (1851). It is a rule of very ancient origin, and while it was introduced into our law through the English common law, it is said to have been derived from a practice followed by the prophet Daniel. See *Estate of Brackenridge* (Tex. Civ. App.) 245 S. W. 786; *Blitch-Everett Co. v. Jackson,* 29 Ga. App. 440, 116 S. E. 47. Neither the provisions of sec. 200.21 (1) already quoted nor sec. 361.14 have ever been construed by this court.

Does the statute conferring upon the state fire marshal or his deputies, in the exercise of the power to separate witnesses and to prevent their communication, authorize him to hold them in custody and permit no communication with them? If the power conferred is as broad and comprehensive as claimed, it presents an anomaly in our law. No court has such a power. Courts may exclude witnesses from the proceeding, forbid their communicating with others in regard to it, and, if the order is violated, the witness violating it may be punished for contempt, and under proper circumstances the court may decline to receive the testimony of the witness. We have searched in vain for any statute or case which goes so far as to say that a court in the exercise of this power may commit a witness to what is practically solitary confinement for any period of time. The statute authorizes the state fire marshal or his deputies to cause the arrest of a person only when he shall be of opinion that there is evidence sufficient to charge him with the crime of arson. It is considered that the statute cannot properly be construed to authorize the fire marshal or his deputy to detain in custody a witness and confine him for the purpose of

preventing him from communicating with others. The power conferred relates to an investigation which is to be conducted by the fire marshal; provides that such a hearing or investigation need not be public; and authorizes the fire marshal to exclude and separate witnesses. A diligent search has failed to reveal any case where a power to commit witnesses for the purpose of separating them has ever been conferred upon any court or exercised by a court. If the witnesses are excluded from the place of hearing or investigation and are in the presence of some one charged with the duty of preventing communication, that would appear to be as far as the authority of the fire marshal or his deputies extends. Neither a district attorney, an examining magistrate, nor a grand jury has power so extensive as that which would be conferred upon the fire marshal and his deputies were the statute construed as defendants contend it should be. In order to insure the attendance of witnesses at the trial, an examining magistrate may require a witness to give a recognizance in the case of a grand jury; such recognizance for the future appearance of the witness must be by order of court. 28 Corp. Jur. p. 808, § 105.

It is held, therefore, that in detaining the witness under such circumstances that he could not communicate with others than the officers, the deputy fire marshal, Finnegan, acted beyond and in excess of his authority.

A number of procedural and detailed errors are urged here, some of which drop out of consideration because of the view which we take of the statute. We shall consider only those which seem to warrant discussion. The court instructed the jury as follows:

"The duty of an officer to take a prisoner before a magistrate without unreasonable delay means to take him before such magistrate forthwith, and forthwith usually means instantly or as soon as it is practicable, and is usually construed to mean not longer than twenty-four hours after the arrest."

We find no authority for the statement that "forthwith" is usually construed to mean not longer than twenty-four hours after the arrest. *Dickerman v. Northern Trust Co.* 176 U. S. 181, 20 Sup. Ct. 311, does not so hold. While it is cited in *State ex rel. Traister v. Mahoney,* 196 Wis. 113, 219 N. W. 380, it relates to civil procedure and not criminal procedure, and it is so limited in the *Mahoney Case.* No rule of thumb can be made which will fit all cases. "Forthwith," like "reasonable time," is a term which is dependent upon the circumstances of each case for the interpretation which is to be placed upon it. In some cases it means instanter (*Hull v. Mallory,* 56 Wis. 355, 14 N. W. 374), in others it means a reasonable time (*Rainer v. Schulte,* 133 Wis. 130, 113 N. W. 396). See 26 Corp. Jur. p. 997 and cases cited.

If the plaintiff was being detained for the purpose of arrest, it was the duty of the arresting officer to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit. The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes. The plaintiff in this case was not detained by virtue of the authority, if any, of the deputy fire marshal to make an arrest. The defendant here was detained for the purpose of preventing him from communicating with other witnesses. It was not until the investigating officer had satisfied himself that in his opinion there was evidence sufficient to charge the plaintiff with arson that he was authorized to make an arrest. If we accept the finding of the jury, that conclusion was not reached until some time on the 26th, approximately thirty-six hours after his original detention. At the farm the defendant Finnegan told the deputy sheriff to take the plaintiff and hold him and that he would be in that evening to question the plaintiff. Pursuant to that direction Richter did take the plaintiff to Wausau, did bring him to the hotel

where he was questioned on the night of the 24th and again on the night of the 25th. Although the jury by direction of the court found that the defendants had reasonable grounds to believe that the crime of arson was committed and that the plaintiff was guilty at the time he was arrested on the 24th, there is nothing to show that the defendant Finnegan or the deputy sheriff made an arrest for the purpose of bringing plaintiff before a magistrate for examination. Having detained the plaintiff in the exercise of a supposed power which they in fact did not possess, the defendants are in no position to complain that upon the trial they were not permitted to justify the act upon other grounds. The ruling of the trial court in that respect was favorable to the defendants.

We come now to the question of damages. The plaintiff was detained prior to presenting him to the magistrate for a period of thirty-six hours. The defendant Finnegan would have been warranted in placing the defendant under arrest as the court held upon the undisputed facts, as a matter of law, that the defendants Finnegan and Schaumburger had reasonable grounds to believe that the crime of arson had been committed and that the plaintiff was guilty thereof. However, it appears without dispute that the plaintiff was not taken into custody in the exercise by the defendants Finnegan and Schaumburger of the right to arrest for the purpose of taking the plaintiff before a magistrate, but that he was detained pursuant to the power supposed to be conferred upon the deputy fire marshal to conduct an investigation and separate the witnesses. Where a person is unlawfully arrested and detained upon one charge, the officer making the arrest cannot justify his conduct by showing that the person so arrested was subject to a legal arrest upon other grounds. *Bergeron v. Peyton,* 106 Wis. 377, 82 N. W. 291. See extended note, 64 A. L. R. 653.

Omitting the part relating to attorneys' fees, which was subsequently corrected, the court instructed the jury with respect to damages as follows:

"You must answer this question regardless of how you may have answered the former questions in this case. The element of damages in this case that you are to consider is first, the loss of time and services, if any; physical suffering, illness, even though the injury to health may be due to mental suffering; physical inconvenience and discomforts; . . . the indignity of the arrest; humiliation, disgrace, and injury to the feelings."

This instruction is supported by authority. *Craker v. Chicago & N. W. R. Co.* 36 Wis. 657.

The court also gave instructions respecting punitory damages, which drop out of the case because the jury found the defendants to be without malice. While it is true that under the construction we have placed upon sec. 200.21 the defendants were not justified in taking the plaintiff into custody under that section, there nevertheless remains the fact which affects not justification but the extent of the plaintiff's damages, that at the end of the thirty-six-hour period the plaintiff was justifiably arrested and taken before a magistrate. *Nelson v. Snoyenbos,* 155 Wis. 590, 145 N. W. 179. The plaintiff's damages with respect to loss of time and inconvenience were very slight under the circumstances. The amount of the verdict returned by the jury must therefore rest mainly upon injury to his feelings, mental suffering, humiliation, and disgrace. It is considered that where one falsely imprisoned is subsequently properly charged with the commission of a felony, the time and degree of his humiliation, mental anguish, and sense of disgrace due to his false imprisonment which would naturally and probably result, is shortened and modified by the humiliation, mental anguish, and sense of disgrace due to his lawful arrest and so operates to mitigate the damages, both com-

pensatory and punitive. *Comisky v. Norfolk & Western R. Co.* 79 W. Va. 148, 90 S. E. 385, L. R. A. 1917 D, 220. While we find no case which goes that far, it is considered under the facts of this case that the damages on account of humiliation, mental anguish, and sense of disgrace were in fact terminated by plaintiff's lawful arrest. How one can continue to suffer on account of an unlawful arrest and confinement after he has been lawfully arrested and confined for a felony, it is difficult to see.

Due to the fact that the trial of the case was embarrassed by the fact that the statute had not been construed and so was tried upon a theory which was not applicable to the transaction, it is considered that there should be a new trial upon the question of damages. The jury found under instructions in favor of the defendants, facts which show the defendants guilty of unlawful arrest and confinement, so that upon that branch of the case a new trial is not necessary.

*By the Court.*—Judgment reversed, and cause remanded for a new trial as indicated in the opinion.