VAJNER, APPELLANT, *v.* ORANGE (VILLAGE), APPELLEE.

Common Pleas Court, Cuyahoga County.

No. 757726. Decided January 11, 1963.

14

*Messrs. Barragate, Gottermeyer & Fahrenbach*, for Charles Vajner, appellant

*Messrs. Baskin, Kelley, Lausche & Heavilin*, for Village of Orange, appellee.

Lybarger, J. This is an appeal from the action of the Council of the Village of Orange, Ohio, on September 7, 1961, whereby the appellant, Charles Vajner, was removed as Chief of Police of said village. The appeal is brought under favor of Section 737.15, Revised Code, which provides in part:

"In case of the removal of a marshal or chief of police of a village, an appeal may be had from the decision of the legislative authority to the Court of Common Pleas to determine the sufficiency of the cause of removal."

The facts as revealed by the transcript of proceedings are as follows: The appellant, Charles Vajner, was Chief of Police of the Village of Orange, Ohio, and had served in this capacity for more than sixteen years without incident or complaint. On the afternoon of August 13, 1961, while the appellant was on vacation, Sergeant Auletta of the Orange Village Police Department arrested Phillip Lotenero and Arnold Lowe for committing a burglary from the residence of George Russo in said village. Soon thereafter both individuals signed written confessions to the crime of breaking and entering and later they admitted breaking into two other residences in the village previously.

Next day policemen from the village took one of the prisoners to a pawn shop and a garage where they identified certain property which they had stolen in the course of previous burglaries. At this time the appellant had returned to duty and was with the officers who accompanied the prisoner. The Chief ascertained that they had not recovered two mink stoles which Lotenero said he could not recover accompanied by police officers, but that if he could go by himself he would be able to get the stoles and return them to the police.

The appellant ascertained that the two prisoners were out on bond on charges filed against them elsewhere; and with a view to recovering the mink stoles in order to complete the evidence in the case against the prisoners, the Chief ordered the release of the prisonrs on condition that they return within seventy-two hours with the stolen property. It was his intention then to charge the prisoners with the crimes committed by them in Orange Village.

The Mayor of the village learned of the action of the Chief on the evening of August 14, 1961. The Mayor thereupon ordered the appellant to be relieved from duty and he instructed Sergeant Auletta to apprehend Lotenero and Lowe and book them without further delay. This was done in due course and the prisoners were returned to jail.

Pursuant to Section 733.35, Revised Code, the Mayor on August 21, 1961, filed written charges against the Chief of Police addressed to the Council of the Village. Therein he charged that the Chief was guilty of malfeasance, non feasance,

misconduct in office and gross neglect of duty in the following particulars:

"1. The said Charles Vajner, as Chief of Police of said Village, without just cause, and with full knowledge of the facts set forth herein, released from the custody of the Police Department of said Village, and set free, Phillip Lotenero and Arnold Lowe, who had been identified and taken into custody by said Village Police Department for, and later had confessed to, the crime of breaking and entering the residence of George Russo, 4599 Lander Road in said Village during the afternoon of the 13th of August, 1961, all contrary to and in violation of the criminal statutes of Ohio.

"2. The said Charles Vajner, as such Chief of Police, released from custody the said Philip Lotenero and Arnold Lowe, not only knowing of the burglary of the home of George Russo, but also knowing that the said Philip Lotenero was suspected of having been involved in the burglary of the home of Frank Geraci, 4489 Brainard Road in the Village of Orange, and the home of Elmer Jensick, 4019 Brainard Road in the Village of Orange; that said Philip Lotenero was awaiting Grand Jury action on the charge of burglary in the city of Solon, Ohio."

On September 6th and 7th the Village Council held a hearing of the charges and evidence was presented by both sides. It is clear from the evidence that the appellant had no ulterior or improper motive in releasing the two prisoners as he did. He felt safe in doing so because they were already out on bond. It is obvious that he wanted not only to have complete evidence against the defendants but also to recover valuable property which had been stolen from one of the residents of the village. His contention was that it was accepted police practice under certain conditions for a police officer to release a prisoner from custody for the purpose of gathering evidence. To a similar effect was testimony from a retired sergeant of the State Highway Patrol, the Chief of Police of the City of Solon and by stipulation the Chief of Police of Moreland Hills, Ohio.

At the conclusion of the hearing the members of the Village Council voted four to two in favor of sustaining the charges against the Chief. It is therefore incumbent upon this Court to determine the sufficiency of the cause of removal.

Turning to the law which bears upon the case, the Court observes that the appointment of a marshal is covered by Section 737.15, Revised Code, which reads in part "each Village shall have a marshal, designated Chief of Police, appointed by the Mayor with the advice and consent of the legislative authority of the village, who is an elector thereof, and who shall continue in office until removed therefrom as provided by Sections 773.35 to 773.39, inclusive, Revised Code." The powers and duties of a village marshal are set forth in Section 737.19, Revised Code, which reads in part as follows:

"The marshal of a village shall suppress all riots, disturbances, and breaches of the peace, and to that end may call upon the citizens to aid him. He shall arrest all disorderly persons in the village and pursue and arrest any person fleeing from justice in any part of the state. He shall arrest any person in the act of committing any offense against the laws of the state or the ordinances of the village, and forthwith bring such person before the mayor or other competent authority for examination or trial."

Under certain conditions the mayor has the duty of preferring charges against any officer of the village whom he considers to be delinquent. This authority stems from Section 733.35, Revised Code, which reads in part:

"The mayor of a municipal corporation shall have general supervision over each department and the officers provided for in Title VII of the Revised Code. When the mayor has reason to believe that the head of a department or such officer has been guilty, in the performance of his official duty, or bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness, he shall immediately file with the legislative authority, except when the removal of such head of department or officer is otherwise provided for, written charges against such person, setting forth in detail a statement of such alleged guilt, and, at the same time, or as soon thereafter as possible, serve a true copy of such charges upon the person against whom they are made."

In the instant case, as indicated above, the Mayor charged the appellant with "malfeasance, nonfeasance, misconduct in

office and gross neglect of duty'' by reason of his having freed the two prisoners who had confessed to crime. The terms used have definite legal interpretation. Malfeasance consists in doing an act which is itself improper, wrongful or unlawful. See *Colburn* v. *Neufarth*, 16 W. L. B., 54. Malfeasance is ''the doing of an act which a person ought not do at all.'' Ballentine Law Dictionary, page 786. Nonfeasance is the term usually used in the law of agency to mean ''the total omission or failure of an agent to enter upon the performance of some distinct duty or undertaking which he has agreed with his principal to do.'' See 20 A. L. R., 104. Misconduct in office includes wantonness and violations of the law, but not honest mistakes. See *State, ex rel. Broadwell,* v. *Roll,* 7 W. L. J., 121. It has been held that it is misconduct in office for an officer knowingly to disobey and violate the statute imposing a duty upon him from a spirit of wilful and improper opposition although he may derive no benefit whatsoever from such misconduct. See *State* v. *Bair,* 50 W. L. B., 11.

As to gross neglect of duty, it is the law that a public officer is guilty of gross neglect when such neglect, from the gravity of the case, or the frequency of the instances, becomes so serious in its character as to endanger or threaten the public welfare. See 23 L. R. A., 699, 706.

In the charges the Mayor alleged that the Chief had acted ''contrary to and in violation of the criminal statutes of Ohio.'' The one place in the Revised Code where the duties of the marshal of a village are set forth is in Section 737.19, Revised Code, quoted above. The brief of the appellee makes it clear that in the opinion of the Mayor the Chief of Police had violated this portion of that section:

''He shall arrest any person in the act of committing any offense against the laws of the State or the ordinances of the village, and *forthwith bring such person before the Mayor or any competent authority for examination or trial.*'' (Emphasis added.)

The argument is advanced that appellant did not forthwith bring the prisoners before the Mayor for examination or trial. It becomes important therefore to determine just what is meant by the language used in the statute.

Webster's 3rd New International Dictionary defines "forthwith" thus,—"with dispatch; without delay; within a reasonable time; immediately." Ballentine's Law Dictionary says that "forthwith" means "with all reasonable diligence and dispatch," see 10 Am. Jur., 773; "within a reasonable time." See 30 Am. Jur., 858. Bouvier's Law Dictionary gives this definition of "forthwith": "as soon as by reasonable exertion, confined to the object, it may be accomplished." "It is not as promptly as immediately; in some cases it might mean within a reasonable time."

"Words and Phrases," Volume 17, page 605 says:

"There is no precise definition, so far as time is concerned, of the words 'forthwith' and 'immediately'; but the meaning depends on the circumstance of the case and the act to be performed."

In *Abbot* v. *State*, 220 N. W., 578, it was held:

"The word 'forthwith,' as used in the statute relating to the appearance of a defendant in a criminal case in the district court, means the first opportunity offered defendant, after appeal is perfected, to appear when said court is in session."

In the case of *Winston* v. *Com.*, 49 S. E. (2d), 611, 615, the court held:

"Statute providing that officer making arrest shall 'forthwith' bring person so arrested before an officer authorized to issue criminal warrants does not mean that officer must forsake all other duties and do so immediately, but it is sufficient if he does so with reasonable promptness and without unnecessary delay."

In *Geldon* v. *Finnegan*, 213 Wis., 539, 252 N. W., 369, the court held:

"Instruction that duty of officers to take prisoner before magistrate without unreasonable delay meant 'forthwith,' which usually meant instantly or as soon as practicable, and not longer than twenty-four hours after arrest, held improper, since 'forthwith' may in some cases mean instanter and in others a reasonable time, but is not confined to twenty-four hours."

In *State* v. *Montgomery*, 28 N. M., 344, 212 P., 341, it was held:

"Section 3603, Code 1915, requiring the city marshal to

forthwith take his prisoner before the proper magistrate for examination and trial, *requires no more than that the same shall be done with reasonable promptness and dispatch."* (Emphasis added.)

From an examination of the law, this Court is convinced that the word "forthwith" as used in Section 737.19, Revised Code, means that a person arrested for and charged with a crime or misdemeanor must be brought before a magistrate with reasonable promptness and dispatch and without unnecessary delay. It does not mean that such person must be brought before the magistrate instanter or necessarily within twenty-four hours or within any given number of hours. He must have a preliminary hearing within a reasonable time depending upon the circumstances of the case.

The Court is convinced that Charles Vajner, the appellant, did not violate the criminal statutes of Ohio as charged in the first specification drawn by the Mayor.

From the testimony at the hearing it appears that in the past it has been accepted police practice under unusual circumstances to permit a person charged with a crime to be released from custody for some special purpose as, for example, in this case to secure the return of stolen property. The Court is critical of this practice but observes that there is no statutory authority either permitting it or forbidding it. Certainly it is a practice which should be indulged in most sparingly and used only as a last resort. At the same time the Court recognizes that it would be unwise as a matter of law to forbid such discretion to police officers absolutely, realizing that in some unusual circumstance it might prove both necessary and desirable in connection with the enforcement of the law.

In view of all the circumstances of the case, the Court is not convinced that the appellant was guilty of malfeasance, misconduct in office and gross neglect of duty. The most that could be said concerning his conduct was that he did not use good judgment in releasing the men in question because he was taking a chance and putting it within their power to flee the jurisdiction. The Court believes the highest punishment which should have been meted out to the Chief of Police for doing as he did was a reprimand. The Court has in mind that on the

basis of the evidence the Chief had served without complaint for more than sixteen years, also the two prisoners did not attempt to leave the jurisdiction and were apprehended at the home of one of the men and placed in custody without resistance. In the last analysis, no harm was done. The Chief had no improper motive in doing what he did. He intended to bring the men before the Mayor for a preliminary hearing upon their return with the stolen property.

The Court holds that the appeal of Charles Vajner is sustained on the ground that there was not sufficient cause for his removal as Chief of Police. A journal entry implementing this opinion may be drawn.