### 13454.  BLITCH-EVERETT COMPANY *v.* JACKSON.

1. The evidence in this case was in conflict, and a verdict was not demanded in favor of either party.
2. Both the Civil Code and the Penal Code provide that " in all cases either party has the right to have the witnesses of the other party examined out of the hearing of each other. The court will take proper care to effect this object as far as practicable and convenient, but any mere irregularity shall not exclude the witness." Civil Code (1910), § 5869; Penal Code, § 1043. The discretion given to the trial judge in the administration of this rule does not authorize a refusal on his part to apply it when properly invoked. Since it devolves upon each party who wishes to obtain the benefit of the rule to invoke it with respect to the separation of the witnesses of his adversary, the fact that the demand of the plaintiff was not entered until after his own witnesses had

testified would not militate against his " right to have the witnesses of the other party examined out of the hearing of each other."
                    DECIDED FEBRUARY 8, 1923.

Complaint; from Chatham superior court — Judge Meldrim. February 2, 1922.

*H. P. Cobb,* for plaintiffs.

*Connerat & Hunter,* for defendant.

JENKINS, P. J.  Section 5869 of the Civil Code and section 1043 of the Penal Code each provide as follows: " In all cases either party has the right to have the witnesses of the other party examined out of the hearing of each other.  The court will take proper care to effect this object as far as practicable and convenient, but any mere irregularity shall not exclude the witness." Prior to the adoption of the code, the English rule, applicable to criminal cases, as laid down by Mr. Chitty, was quoted and approved by the Supreme Court in *Johnson* v. *State,* 14 *Ga.* 55, 62, as follows: " Before the examination commences, the Crown may demand that the witnesses should retire, in order to each being questioned in the absence of the others.  And the same order will be made on the request of the defendant, but as matter of indulgence, and not of right."  Since the adoption of the code, as pointed out by the Supreme Court in *Keller* v. *State,* 102 *Ga.* 506, 508 (31 S. E. 92), " a much more equitable practice has been of force, whereby the accused is put upon an equal footing with the State in this respect, and the court is enjoined to effect the object of the rule so ' far as practicable and convenient.' . . *Turbaville* v. *State,* 58 *Ga.* 545.  As formerly, however, ' it is in a great degree discretionary with the presiding judge whether he will allow some ' of the witnesses to remain in the court-room to assist in the conduct of the case, when he is requested so to do by one of the parties."  While it is thus well settled that, even under the broadened and positive rule of the statute, there is nothing to prevent the presiding judge in the administration of the rule from exercising a discretion in permitting some of the witnesses put under it to remain within the hearing of the court (*Carson* v. *State,* 80 *Ga.* 170, 5 S. E. 295) , and while it is equally well settled that " where the rule for the sequestration of witnesses has been invoked, the fact that one offered as a witness has heard the testimony given by other witnesses does not render his testimony incompetent " (*Davis* v. *State,* 120 *Ga.* 843 (2), 48 S. E.

305), still, as was said in *Shaw* v. *State,* 102 *Ga.* 660, 667 (29 S. E. 477), it is not to be understood that "trial judges are at liberty to ignore the positive right established by statute." In other words, since the adoption of the code, either party, whether in a criminal or a civil case, may as a matter of right invoke the rule to have the witnesses of the *other* party examined out of the hearing of each other. As evidenced by the language of the statute itself, it is only in the administration of this rule that judges have any sort of discretion.

The question involved in the instant case is not whether the application of the rule is mandatory when timely invoked, but whether the demand entered by the plaintiff came too late, in that it was not made until after its own witnesses had testified. The position of the defendant in error could not be better or more strongly presented than by quoting from the order of the trial judge overruling the motion for a new trial. The orders which are passed by this learned jurist are always exceedingly helpful and illuminating, since they rarely fail to state concisely the question or questions involved, together with the reason or reasons which controlled in the judgment rendered. We quote from his order in this case as follows: "The other ground of the motion complains that the court refused to sequester the defendant's witnesses, on the request of plaintiff's counsel. Of course, either party has the right to have the witnesses of the other party examined out of the hearing of each other. But the question is: When shall the right be exercised? It is just as important to exercise a right at the right time as it is to possess the right. In this case, plaintiffs' witnesses had testified in the hearing of each other, and when the plaintiffs closed their case and the defendant started to introduce her witnesses, the plaintiffs moved to sequester the defendant's witnesses. This I refused to do. It seemed to me manifestly unfair to the defendant for the plaintiffs to have their witnesses examined in the hearing of each other, and then to sequester the defendant's witnesses. While in almost every case, civil and criminal, sequestration is requested, it has always been requested before the introduction of the testimony has commenced, and in over fifty years at the bar and on the bench I do not recall a single case where the motion was made after the witnesses of one party had been examined. Invariably, when the

request for sequestration is made by one party, it is also made by the other, and the practice now is, when the request is made by either party, for the court to say, 'Let the witnesses for both sides be called, sworn, and sequestered.' The object of all legal investigation, civil and criminal, is the ascertainment of the truth. On the criminal side of the court the request to sequester must be made before the introduction of testimony. The reason is the same, whether the cause be civil or criminal. Mr. Phillips thus states the rule: 'The court on the application of counsel will order the witnesses on both sides to withdraw.' 2 Phil, Ev. 395. This is the rule which I follow, and I think it the correct rule. Counsel for movant is evidently mistaken in supposing that the rule came into existence by the adoption of our code. Certainly as far back as the days of Fortescue the rule existed, and Greenleaf in 1842 thus states it: 'If the judge deems it essential to the discovery of the truth that the witnesses should be examined out of the hearing of each other, he will so order it.' Mr. Cobb practically codified the body of the law of evidence as stated by Greenleaf, and in this section of the code which we are now considering Mr. Cobb used in part the identical words of Greenleaf. Our statute did change the rule to this extent, that that which had been discretionary is now *mandatory*. The rule in this State, both civil and criminal, is expressed in identically the same words. And the rule is stated by Greenleaf (7th ed., § 432) as being the same in civil and criminal cases. In this State, in one of the earlier cases (14 *Ga.* 55), it was held that the motion to retire the witnesses must be made 'before the examination commences.' "

It has been seen from what has already been said with reference to the history of this rule that under the English practice as applied in criminal cases the Crown had the right to demand its application, while the defendant was only privileged to request it. While, in the early case of *Johnson* v. *State,* supra, rendered prior to the adoption of the code, the Supreme Court approved the language of Mr. Chitty above quoted, yet the court in that case extended the scope of the rule by adopting as the syllabus therein the following language: " In criminal trials, before the examination commences, either the State or the defendant may require that the witnesses should retire, in order to each being

questioned in the absence of the others." The manifest effect of the rule thus established prior to the adoption of the code was that, in criminal cases, upon the demand of either side, "the witnesses,"— that is, all the witnesses,— should retire. It necessarily follows that, under that rule, where in order to demand the exclusion of any of the witnesses it was necessary to exclude them all, the only time at which a demand to exclude them all could be made would be "before the examination commences." The present statutory provisions upon the subject are not, however, a codification of that decision. The effect of the statute is materially different, and still further broadens the rights of litigants in this respect. Not only is the application of the rule to defendants made mandatory, instead of, as formerly, merely discretionary, and not only is the rule expressly made to apply in all civil cases, but by the clear and unambiguous language of the code either party, whether in criminal or civil cases, "has the right to have the witnesses of the *other* party examined out of the hearing of each other." Thus, under the rule fixed by the statute, it is no longer necessary for either party to demand the separation of *all* witnesses in order that the witnesses of his adversary may be sequestered. Even under the common law we find that it was held in Southey *v.* Nash, 32 Eng. Com. Law Reports, 664, that "either party at any period of a cause has a right to require that the unexamined witnesses should be out of court;" but whatever may have been the rule under the common law, and whatever rule may have been adopted by foreign jurisdictions, the Georgia statute as embraced in the code has fixed and established for this State a definite and positive rule of its own, which must be given effect, to the exclusion of any previous interpretation of the procedure obtaining under the common law. Under the law of the code, in order for a party to avail himself of his right under the statute, he is not required, nor does it seem he is even empowered, to sequester in this way his own witnesses. That right is given to his adversary, since "in all cases either party has the right to have the witnesses of the *other* party examined out of the hearing of each other." It would, therefore, be an abridgment of the right given to each party under the statute to attach as a condition thereto a requirement not only foreign but which imposes an actual limitation upon the express language employed. Even

when the demand of a plaintiff or defendant is entered prior to the introduction of any evidence, the only legal effect is to sequester the witnesses of "the other party." This being true, both in criminal and civil cases, it would seem to be the duty of either party who wishes to obtain the benefit of the rule to "speak for himself."

The rule of procedure which we have been considering is exceedingly beneficent in the administration of justice, and the broadened rights given under the positive terms of the statute should not be abridged. The germ of this most valuable aid to litigants in the ascertainment of truth is more ancient even than Fortescue. In the history of the unjustly accused Susanna of the Apocrypha it is stated that the Daniel of that judgment caused to be put aside her two accusers one from the other, with the result that the falsity of their testimony against her was established; and we are told that from that day Daniel had great reputation in the sight of all the people.

*Judgment reversed. Stephens and Bell, JJ., concur.*