## 39721. PUTMAN v. THE STATE.

SMITH, Justice.

In the early morning hours of July 10, 1980, David Hardin and his wife Katie, residents of Kentucky, were shot to death at an Interstate 75 rest area near Lenox, Georgia. Truck driver William Howard Putman was arrested and charged with two counts of murder. A Cook County jury found Putman guilty on both counts and recommended the death penalty. This appeal follows. We affirm.

1. The victims spent the week preceding their deaths vacationing in Daytona Beach with their three children and David's niece Beverly Culver. They left Daytona Beach in their blue Dodge sedan on the evening of July 9 and arrived at the Lenox rest area some time prior to 3:00 a.m. on the tenth. They parked in the automobile parking lot of the rest area and went to sleep.

Later arrivals at the rest area included Verlin Colter, who parked two spaces to the right of the Hardins, and Dessie Harris, who parked across the drive-through, opposite the Hardin automobile.

Dessie testified that, upon her arrival, she spread a blanket on the hood of her car. As she sat on the blanket, smoking a cigarette, she observed a dark-colored "semi," pulling a flat-bed trailer, drive slowly several times through the automobile parking lot. The truck eventually parked at the end of the parking lot. The driver got out, reached into the the cab of the truck, retrieved an object and walked toward her car. He stopped under a nearby tree, approximately five feet from Dessie, and whistled at her. She stared at him but said nothing. The man then walked behind her car and proceeded across the parking lot. He went around to the front of the Hardin automobile and stood there for a few moments.

In the meantime, Verlin Colter arrived and parked. He observed that a dark-colored semi with an empty, yellow flat-bed trailer was parked at the end of the automobile parking lot and that a man was standing in front of the blue Dodge, whose occupants were all apparently asleep.

Dessie testified that the man walked around to the driver's side

of the Hardin automobile. She heard a loud noise and then the man ran to the passenger side of the car.

Verlin testified that, just as he lay down in his automobile, he heard a loud noise that sounded like a firecracker. He looked up and saw a woman in the front passenger seat of the Dodge opening the passenger door. The man he had seen earlier ran around the car to her door.

Beverly Culver, who had been asleep in the back seat of the Dodge with Katie's two older children, testified that she was awakened by a loud noise. She saw a man standing outside the car, next to David Hardin, who lay in the driver's seat with his head resting on the back of the seat, next to the door. The man hurried to the passenger side of the car.

Beverly, Verlin and Dessie all observed what happened next: As Katie Hardin tried to get out of the car, the man grabbed her and demanded that she go with him. She refused, and screamed for David, who lay fatally wounded in the driver's seat. The man shot Katie in the head. He then reached into the car and placed something into the waist-band of his pants. He ran to his truck and drove off, headed north.

Verlin called the police, who arrived at the rest area just before 5:30 a.m. Based on information obtained from the witnesses, a lookout was posted for a white male, proceeding north on Interstate 75, driving a dark-blue or black truck pulling an empty, yellow flat-bed trailer.

A truck fitting this description was spotted by police just south of Cordele and followed to a rest area in Dooly County. The truck parked in the exit lane of the rest area and the driver went to the restroom. Backup units arrived and the driver, William Howard Putman, was arrested after he returned to his truck. Officers smelled alcohol on Putman's breath and he was initially taken to the Dooly County Sheriff's Office for an intoximeter test, which indicated that Putman's blood alcohol level was .13 grams/percent. Putman had what appeared to be blood on his left pants leg.

Officers recovered a .38 caliber revolver from under the driver's seat of Putman's truck. The revolver had three live rounds and two spent cartridges in its chamber. A gun case and David Hardin's wallet lay on the passenger seat.

Putman was returned to Cook County at approximately 7:30 a.m. Dessie Harris was at the courthouse, having just given a statement to investigators. As she stood outside smoking a cigarette, Putman arrived in a police car. She immediately recognized him as the man who had shot David and Katie Hardin.

At approximately 2:30 p.m. of the same day, the body of William

Gerald Hodges was found slumped over the wheel of his automobile in the parking lot of a truck stop in Valdosta. He had been shot in the head and shoulder. The pathologist who conducted the autopsy testified that a time of death could not be established with any certainty. However, lividity patterns indicated that death had occurred some time prior to Hodges' arrival at the morgue at 3:10 p.m. A .38 caliber bullet was recovered from the interior of his automobile and another was recovered from inside his skull.

After Putman's arrival in Cook County, his clothing was removed from him and the contents of his pockets were inventoried. In his shirt pockets were two .38 caliber cartridges and an insurance card bearing the name William G. Hodges. In the pockets of his trousers were a gold Timex wristwatch and two gold rings, one having a red stone and the other a blue stone. The rings and the watch were identified by friends as having belonged to William Hodges. Serological examination of the reddish-brown substance on the leg of Putman's trousers and on the blue-stone ring established that the substance was blood having characteristics consistent with the blood of William Hodges and inconsistent with the blood of 98.3 percent of the general population.

A fresh dent was discovered on the right rear corner of the roof of Hodges' automobile. The dent was horizontal, two or three inches long. Yellow paint was present in the grooves of the dent, and loose flakes of yellow paint surrounded the dent. The yellow paint was the same color as the trailer of Putman's truck.

The .38 caliber revolver found in Putman's truck was purchased by him at a Talladega, Alabama, pawn shop on May 9, 1980. Ballistics examination showed that the bullet removed from the skull of David Hardin, the bullet removed from the skull of Katie Hardin, the bullet removed from the skull of William Hodges and the bullet removed from the interior of Hodges' automobile had all been fired from the same gun: Putman's .38 caliber revolver.

Putman testified that he was returning from Florida on the 9th and 10th of July. He admitted that he stopped at the truck stop in Valdosta at approximately 10:00 p.m. on the 9th. He said he had two beers and three mixed drinks, and then went to sleep in his truck. When he left a couple of hours later, he took with him a hitchhiker known to him only as "Jeff." He stopped briefly at the first rest area north of Valdosta on Interstate 75, near Hahira, to wash his hands, and subsequently let Jeff out at an exit near Adel. He then proceeded directly to the rest area in Dooly County where he was arrested. Putman denied having stopped at the Lenox rest area. He admitted owning the .38 revolver found in his truck, but denied having shot anyone with it.

In his fifth enumeration of error, Putman contends the evidence is insufficient to support his conviction for the murders of David and Katie Hardin. We disagree. The evidence is not insufficient, it is overwhelming. This enumeration of error is meritless.

2. In his first enumeration of error, Putman contends the trial court erred by allowing the state to introduce evidence of the Lowndes County murder, relying on OCGA § 24-2-2 (Code Ann. § 38-202), which provides: "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."

We find no error. The state proved that Putman was the perpetrator of the Lowdnes County crimes. The Lowndes County crimes and the Cook County crimes were part of a continuous course of conduct, closely connected in time, place and manner of commission. Compare *Walraven v. State,* 250 Ga. 401 (4b) (297 SE2d 278) (1982). The evidence, considered in its entirety, including the evidence proving the commission by Putman of the Lowndes County murder, effectively rebuts Putman's contention that what really happened was that some unknown person removed Putman's gun from his truck, used it to commit murder, and later "tossed the gun back into his tractor where it was ripe for 'finding' by officers of the law."

"This presents a classic case for application of the exception: In order to prove that the defendant committed the murders . . . [in Cook County], it is necessary and proper to introduce evidence relating to the crimes . . . [in Lowndes County]. Thus, the statute not only provides no bar but in fact authorizes the introduction of the evidence." *Rivers v. State,* 250 Ga. 288, 297 (5) (298 SE2d 10) (1982). This enumeration of error is without merit.

3. In his second enumeration of error, Putman contends the trial court erred by admitting two photographs, taken shortly after the crime, depicting two of the children who had been present in the Hardin vehicle at the time of the killings and the bloodstains on their clothing. We find no error. The children were part of the crime scene and photographs depicting the crime scene are relevant and admissible. *Alexander v. State,* 239 Ga. 108 (1) (236 SE2d 83) (1977); *Mills v. State,* 140 Ga. App. 192 (2) (230 SE2d 317) (1976).

4. Putman contends in his third enumeration of error that evidence concerning an out-of-court experiment by law enforcement officers should have been excluded.

After Putman's arrest, his tractor-trailer rig was transported to Cook County and parked near the courthouse. William Hodges' automobile was subsequently driven to Cook County and backed up

to the trailer to see if the dent in its roof could have been made by the trailer. The lower portion of the yellow metal frame of the trailer bed was found to be approximately the same height as the dent in the roof of Hodges' automobile. Photographs, taken from several different angles, were made of this experiment and later offered into evidence by the state.

Putman contends that the experiment could not have been a re-creation of the accident because there was no evidence to show that there had been an accident. Moreover, even if there had been an accident, Putman argues, it occurred in the packed-limestone parking lot of the truck stop, not on a paved street adjacent to the Cook County courthouse. In addition, Putman contends that evidence regarding the experiment was inadmissible because the state failed to negate any possibility of an alteration in the height of the trailer after it left the truck stop and because at the time of the experiment the truck was leaning "at an extreme angle to the right" due to the slope of the street.

Preliminarily, we observe several well-settled principles pertinent to our resolution of this enumeration of error: First, "[t]he admission or exclusion of testimony as to experiments must rest largely in the discretion of the trial judge, and the exercise of this discretion will not be controlled unless abused. The weight of such testimony is for the jury, and varies according to the circumstances of similarity that [the jury] may find to exist between the experiments as made and the actual occurrence under investigation." *Bell v. State,* 164 Ga. 292 (3) (138 SE 238) (1927). Second, the state is not required to negate all possibility that an object used in an experiment was altered or tampered with. *Carson v. State,* 241 Ga. 622 (2) (247 SE2d 68) (1978). Third, "[t]hat the testimony objected to falls short of proving the fact sought to be established, is not itself sufficient reason for excluding it, provided that it, alone or in connection with other testimony, tends to prove the matter in issue. [Cit.]" *Williams v. State,* 153 Ga. App. 890, 892 (267 SE2d 305) (1980).

We have examined the photographs and conclude that their admission was not an abuse of discretion. It is apparent from the photographs that the trailer was not quite level at the time of the experiment, but we cannot agree that it was sitting at such an angle as to render the experiment worthless. The state was not trying to re-create all the circumstances of the accident; the state was trying to prove that Putman's trailer could have made the dent in Hodges' automobile, and the photographs themselves, as well as other evidence presented, tend to establish that it did. The photographs were evidence circumstantially connecting Putman with the death

of Hodges and, as we held in Division 2, ante, the circumstances surrounding the death of Hodges were relevant to this case. This enumeration of error is meritless.

5. The day before the trial was scheduled to begin, the father of defense attorney Daniel Studstill passed away. Putman moved to continue the case. Putman's fourth enumeration of error is premised on the denial of this motion.

Within 10 days of his arrest on July 10, 1980, Elsie Griner of Nashville, Georgia, was retained by Putman to represent him in Cook and Lowndes counties. On November 13, 1980, Putman moved to continue the Cook County case until the Lowndes County case could be tried. This motion was concurred in by the state, and the court granted the motion. Putman was thereafter convicted in Lowndes County and his conviction was affirmed in *Putnam v. State,* 250 Ga. 418 (297 SE2d 286) (1982).[1]

On April 22, 1981, the first proceeding contemplated by Rule II (A) of the Unified Appeal Procedure (Code Ann. Ch. 27-25, Appendix) was held in Cook County. At this hearing, Daniel Studstill was appointed by the court to assist Mrs. Griner. Subsequent hearings were conducted on May 28 and June 17 of 1981, and on May 24, May 28, June 29 and September 10 of 1982. Studstill was present at all of these hearings except that of May 24, 1982, which he missed because his father had taken seriously ill.

At the hearing of June 17, 1981, Putman requested a continuance until such time as the transcript of the Lowndes County trial could be obtained and studied. At the time of this hearing, the Lowndes County court reporter had not yet begun transcription of the trial. The court granted this motion for continuance.

On October 27, 1981, Mrs. Griner's granddaughter, Gaylen Alderman, was admitted to the bar and became associated with the case. Ms. Alderman was present at all subsequent hearings and during the trial of the case.

At the hearing of May 28, 1982, the trial court stated its intention to try the case in June. Putman again moved to continue the case so that discovery material furnished by the state could be thoroughly examined. The court again agreed to continue the case and set a trial date of September 13, 1982.

On Sunday, September 12, 1982, the court was informed that Studstill's father had passed away. The court convened at 4:00 p.m. to consider Putman's request for a continuance. At this hearing, Mrs.

---

[1] We note, without further comment, the difference in the way the two counties have spelled the defendant's name.

Griner confirmed that she was lead counsel for the defendant and had represented him continuously, in Lowndes and Cook counties, for over two years. She testified that she and Ms. Alderman were retained in the case and that Studstill had been appointed by the court to provide additional assistance. She had planned to let Studstill conduct the voir dire and to handle the examination of some of the witnesses; however, which witnesses would be Studstill's responsibility had not been decided at the time of his father's death. She expressed her opinion that Studstill's presence during the trial of the case was necessary.

The trial court noted that two days previously it had appointed the Cook County public defender to provide research assistance to defense counsel during the trial of the case. The court found that Mrs. Griner and Ms. Alderman were more than capable of trying the case without the assistance of Studstill and denied the continuance.

Putman cites OCGA § 17-8-24 (Code Ann. § 81-1413), which provides: "The illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for continuance, provided that the party making the application will swear that he cannot safely go to trial without the services of the absent counsel, that he expects his services at the next term, and that the application is not made for delay only." The state responds that, since Studstill was neither the sole attorney nor lead counsel, this statute is inapplicable and that, under the circumstances of this case, the trial court's denial of continuance was not error. We agree.

"A refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard." *Marshall v. State,* 239 Ga. 101 (1) (236 SE2d 58) (1977). See also, *Ealy v. State,* 251 Ga. 426 (3) (306 SE2d 275) (1983). No abuse of discretion appears in this case, and there is no merit to Putman's fourth enumeration of error.

6. Prior to the beginning of voir dire, the rule of sequestration was invoked. At this time, former sheriff D. J. Connell was seated at the state's table. Putman moved that Connell be sequestered along with the other witnesses. The state asked the court to allow Connell to remain at the state's table during the voir dire and the selection of the jury. The court granted the state's request. Putman contends in his sixth enumeration of error that this ruling was error. We disagree.

The trial court was not required to enforce the rule of sequestration until the presentation of evidence. *Hughes v. State,* 128 Ga. 19 (1) (57 SE 236) (1907); *Blitch-Everett Co. v. Jackson,* 29 Ga. App. 440 (2) (116 SE 47) (1922). Moreover, Connell never testified. See *Roach v. State,* 221 Ga. 783 (7) (147 SE2d 299) (1966). Nor do we

find any merit to Putman's contention, made for the first time after trial, that Connell's presence at the state's table during voir dire somehow prejudiced the jury against Putman. This enumeration of error is meritless.

7. The trial court did not err by refusing to give Putman's requested charge on credibility of witnesses. "The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principles, is not grounds for reversal." *Kelly v. State,* 241 Ga. 190, 191-192 (4) (243 SE2d 857) (1978).

8. During the cross-examination of a state's witness, Putman's attorney sought to inquire whether William Hodges had been a homosexual. The state objected to the question and asked that the jury be removed. Outside the presence of the jury, the witness answered that she did not know Hodges' sexual preferences. The court, anticipating future attempts to elicit, in the presence of the jury, testimony regarding Hodges' possible homosexuality, undertook to determine how such testimony was relevant. In response to the court's inquiry, Putman's attorney theorized: "It's our belief that William Gerald Hodges went on a regular basis to the Fifth Wheel Lounge. It's our belief that he parked across the street in the parking lot of the All American Truckstop. It's our understanding that the purpose of that visit to the Fifth Wheel Lounge and to that parking in the truckstop parking lot was for certain elicit [sic] sexual liaisons and we believe that's [sic] it's possible to show that during one of those elicit [sic] sexual liaisons, he was murdered by someone with whom he had such a contact."

The court ruled: "Well, I don't see that this is relevant in this case . . . I'm going to rule that this is not admissible in the court, now. If you want to make an offer of proof then we'll go into that at that time . . . [D]on't talk about this in front of the jury."

In his eighth enumeration of error, Putman contends the trial court erred by excluding testimony concerning Hodges' homosexuality. We cannot agree. Putman's theory supporting the admissibility of such testimony was mere speculation, unsupported by any evidence. See *Cofield v. State,* 247 Ga. 98 (6) (274 SE2d 530) (1981). Moreover, despite being provided ample opportunity to make an offer of proof concerning any evidence excluded by the court,[2] Putman failed to show that a witness existed who could have testified that Hodges was a homosexual. Putman could hardly have been

---

[2] See, Unified Appeal Procedure, Rule III (A) (2) (c) (Code Ann. Ch. 27-25, Appendix); Transcript Vol. III, p. 911; Vol. IV, p. 1218.

harmed by the exclusion of that which did not exist. We conclude that Putman has failed to demonstrate harm or error and that this enumeration of error is without merit.

9. In his ninth enumeration of error, Putman contends that the trial court erred by refusing to allow him or his attorneys to make a statement to the court after the jury rendered its verdict and prior to the pronouncement of sentence by the court. This enumeration of error is not supported by argument or citation of authority. See Supreme Court Rule 45 (Code Ann. § 24-4545). We have nonetheless reviewed the asserted error pursuant to Rule IV (B) (2) of the Unified Appeal Procedure (Code Ann. Ch. 27-25, Appendix).

We note that OCGA § 17-10-31 (Code Ann. 26-3102) provides that where the jury recommends the death penalty, "the court *shall* sentence the defendant to death." It is difficult to imagine how a court might commit reversible error by refusing to allow defense comment on a sentence that, once the jury has rendered its verdict, is mandatory. We need not strain to do so here, however, because it is clear from the transcript that neither Putman nor his attorneys sought to make a statement prior to the pronouncement of sentence. This enumeration of error is therefore meritless.

10. Putman's tenth enumeration of error, challenging the practice of death-qualification of potential jurors during voir dire, is likewise meritless. *Mincey v. State,* 251 Ga. 255 (2) (304 SE2d 882) (1983).

11. The trial court did not err by overruling Putman's constitutional challenge to Georgia statutes relating to the imposition of the death penalty. See Zant v. Stephens, —— U. S. —— (103 SC 2733, 77 LE2d 235) (1983); Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); Smith v. Balkcom, 671 F2d 858, 858-859 (5th Cir. 1982). Putman's eleventh enumeration of error is meritless.

### *Sentence Review*

12. The jury found that the murder of David Hardin was committed while the offender was engaged in the commission of two other capital felonies, the murder of Katie, and the armed robbery of David. The jury found that the murder of Katie (Back) Hardin was committed while the offender was engaged in the commission of two other capital felonies, the murder of David and the armed robbery of David. The jury recommended the death penalty for each murder.

The evidence supports the jury's findings of statutory aggravating circumstances beyond a reasonable doubt. OCGA § 17-10-35 (c) (2) (Code Ann. § 27-2537). We note, however, the presence of mutually supporting aggravating circumstances. See,

e.g., *Waters v. State,* 248 Ga. 355 (12) (283 SE2d 238) (1981).

"As we have held in the past, OCGA § 17-10-30 (b) (2) (Code Ann. § 27-2534.1) is applicable to multiple murders. *Gilreath v. State,* 247 Ga. 814 (6) (279 SE2d 650) (1981)." *Romine v. State,* 251 Ga. 208 (8) (305 SE2d 93) (1983). In a double murder case such as this, the fact that the offense of murder was committed while the offender was engaged in the commission of another murder is a statutory aggravating circumstance which will support the imposition of a death penalty. However, the doctrine of "mutually supporting aggravating circumstances" precludes imposition of *two* death sentences where the sole statutory aggravating circumstance is that the defendant has committed a double murder. *Waters v. State,* supra; *Burden v. State,* 250 Ga. 313 (6) (297 SE2d 242) (1982). Nonetheless, where, as here, each murder conviction is supported by an independent statutory aggravating circumstance (in this case, armed robbery), the jury may impose the death penalty for each murder. *Wilson v. State,* 250 Ga. 630 (9) (300 SE2d 640) (1983). In such cases, that the jury has designated each murder as a statutory aggravating circumstance supporting the death penalty for the other does not require the reversal of either death sentence. Ibid.

13. We note that the trial court did not define armed robbery in its sentencing charge. However, the court did define armed robbery in its guilt-innocence charge in connection with a charge on felony murder. The failure to recharge the definition of armed robbery during the sentencing phase was not error. *Rivers v. State,* 250 Ga. 303 (8b) (298 SE2d 1) (1983).

14. We note, also, that Putman contended at trial that, since he had not been indicted for armed robbery, armed robbery could not be used as a statutory aggravating circumstance. This contention is not raised on appeal and, in any event, is without merit. *Jones v. State,* 249 Ga. 605 (6) (293 SE2d 708) (1982).

15. After review of the record in this case, including arguments of counsel, the charge of the court, and matters dealt with in Division 12 of this opinion, we conclude that the sentences of death were not imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1) (Code Ann. § 27-2537).

16. "The similar cases listed in the appendix support the death penalty in this case. Those cases show that juries find that the death penalty is appropriate punishment where a defendant is found to have been the actual perpetrator of, or active participant in, double murders committed upon victims who are unrelated to the defendant. Features frequently found in such cases are burglaries, armed robberies or kidnappings." *Rivers v. State,* 250 Ga. 288, 302 (10) (298 SE2d 10) (1982).

Putman robbed and murdered a vacationing couple, unknown to him, who, prior to Putman's unprovoked attack, had been asleep in their car. These crimes followed, by just a few hours, the commission by Putman of similar crimes in an adjacent county. Clearly, the death penalty is neither excessive nor disproportionate punishment for such behavior. OCGA § 17-10-35 (c) (3) (Code Ann. § 27-2537). His death sentences are affirmed. OCGA § 17-10-35 (e) (1) (Code Ann. § 27-2537).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 1983 —
REHEARING DENIED NOVEMBER 8, 1983.

*Griner & Alderman, Elsie Higgs Griner, Galen P. Alderman, Perry, Moore & Studstill, Daniel L. Studstill,* for appellant.

*Lew S. Barrow, District Attorney, Robert B. Ellis, Jr., Jeffrey D. Garmon, Assistant District Attorneys, Michael J. Bowers, Attorney General, William B. Hill, Jr., Senior Assistant Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978); *Holton v. State,* 243 Ga. 312 (253 SE2d 736) (1979); *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981); *Mathis v. State,* 249 Ga. 454 (291 SE2d 489) (1982); *Rivers v. State,* 250 Ga. 288 (298 SE2d 10) (1982); *Wilson v. State,* 250 Ga. 630 (300 SE2d 640) (1983).