## 40891. FINNEY v. THE STATE.
(320 SE2d 147)

GREGORY, Justice.

This is a death penalty case. Appellant Eddie William Finney and co-defendant Johnnie Mack Westbrook were indicted in Jones County for the murder and kidnapping of two elderly women. They were tried separately, convicted, and sentenced to death. The cases were affirmed on direct appeal. *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978). Their sentences were subsequently vacated by the United States Court of Appeals, Eleventh Circuit, on the basis of virtually identical deficiencies in the sentencing instructions given at their respective trials. Finney v. Zant, 709 F2d 643 (11th Cir. 1983); Westbrook v. Zant, 704 F2d 1487 (11th Cir. 1983).

Finney was returned to Jones County for retrial as to sentence. His motion for change of venue was granted, and a resentencing trial was held in Morgan County in December 1983. Finney was again sentenced to death and now appeals. See OCGA § 17-10-35 (f).

The evidentiary facts of the case are fully set forth in *Westbrook v. State,* supra.

1. In his first enumeration, Finney complains of the trial court's refusal to grant his request for funds to employ psychiatric and psychological experts of his own choosing. We find no error. The grant or denial of a motion for independent psychiatric assistance lies within the discretion of the trial court. *Messer v. State,* 247 Ga. 316 (1) (276 SE2d 15) (1981). Here, Finney's request for an evaluation by experts at Central State Hospital was granted and these experts were directed to determine not only whether Finney was incompetent or insane, but also whether he suffered from any mental disorders or defects which might be pertinent to mitigation. Compare Westbrook v. Zant, supra (III A). The report of the trial judge contains a copy of an evaluation

---

of Finney dated October 27, 1983 done by a forensic team from the hospital composed of chief psychologist Gerald S. Lower, Ph.D., J.D.; Luis J. Jacobs, M.D.; and Gaye Cowan, R.N., B.S.N. The team reported no evidence of any major psychiatric disorder, delusional compulsion, or inability to distinguish right from wrong. There is also a November 1, 1977 summary of a psychiatric evaluation attached to the trial judge's report. In it, Carl L. Smith, M.D., reported that Finney was functioning in the borderline to dull normal range of intelligence, but was not mentally retarded. The results of the evaluation were not consistent with psychosis or insanity. There is nothing in the record to indicate these evaluations were inadequate or erroneous. Finney was not deprived of expert assistance regarding his mental condition, and the trial court did not err by refusing to provide additional assistance of Finney's own choosing. Finney v. Zant, supra at 645.

2. "The granting of sequestered voir dire is within the discretion of the court, and a showing of prejudice from denial is necessary to show an abuse of discretion. [Cits.]" Sanborn v. State, 251 Ga. 169, 170 (3) (304 SE2d 377) (1983). Finney has shown no prejudice from the denial of sequestered voir dire and his second enumeration of error is therefore meritless.

3. In his third enumeration, Finney contends the trial court erred by refusing to excuse for cause three veniremen whose voir dire responses showed a bias in favor of the death penalty.

We find no error. Although some of their initial answers indicated the contrary, all of these three prospective jurors ultimately testified that they could consider a life sentence and could extend mercy if the facts warranted it. They stated, moreover, that they had no fixed opinion that would not yield to the evidence.

"A person who favors the death penalty can be entrusted to make the choice between death and life imprisonment unless that person's bias for capital punishment is unequivocal and absolute." Hance v. Zant, 696 F2d 940, 956 (11th Cir. 1983). The voir dire testimony of these veniremen failed to show that any of the three would vote automatically for the death penalty simply because Finney had been convicted of murder. Roberts v. State, 252 Ga. 227 (10g) (314 SE2d 83) (1984); Mincey v. State, 251 Ga. 255 (10) (304 SE2d 882) (1983). We note that another prospective juror who did indicate that he would vote automatically to give Finney the death penalty was properly excused by the court.

This enumeration of error is meritless.

4. In Enumeration 4, Finney contends the trial court erred by allowing in evidence four photographs.

Two of these photographs depicted, from different angles, the victims' bodies as they lay at the murder scene. The court did not err

by admitting these photographs. "[P]hotographs depicting the crime scene are relevant and admissible." *Putman v. State*, 251 Ga. 605, 608 (3) (308 SE2d 145) (1983).

The other two photographs depict one of the victims while still living, holding in her lap a small child. These photographs had been shown to Finney prior to his arrest, while law officers were still searching for the missing victims. Upon observing the photographs, Finney stated that he had cut grass for the woman, but had not been to her house in over a year. In fact, he had been to her house the previous day. He knew, moreover, that she had been raped, kidnapped and beaten to death with a two-by-four and that her body lay in some woods several miles outside of town.

Finney contends that to the extent the photographs were offered to prove the identity of one of the victims, they were totally irrelevant, since he already stood convicted of murder. We disagree. Evidence is not inadmissible at a re-sentencing trial simply because it may " 'go to the guilt or innocence of the defendant.' " *Blankenship v. State*, 251 Ga. 621, 624 (308 SE2d 369) (1983).

In addition, a defendant's conduct after the commission of a crime is relevant to sentence. Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980). These photographs supported the state's contention that Finney had lied to officers investigating the victim's disappearance, and demonstrated Finney's lack of remorse for the crimes he had committed. Thus, they were not inadmissible for any reason shown.

This enumeration of error is without merit.

5. In his sixth enumeration, Finney contends the prosecutor's closing argument violated OCGA § 17-8-76 (a), which provides: "No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency."

The prosecutor told the jury that "if [Finney] is ever on the street again in his whole life, there is no doubt but what he'll commit crimes like this again." The district attorney made no reference to pardon, parole or other clemency. Therefore, his argument did not violate OCGA § 17-8-76 (a). *Gilreath v. State*, 247 Ga. 814 (15) (279 SE2d 650) (1981); *Mason v. State*, 236 Ga. 46 (7) (222 SE2d 339) (1976). Moreover, Finney did not ask the court to declare a mistrial. OCGA § 17-8-76 (b).

On appeal, Finney for the first time complains of other portions of the prosecutor's closing argument. We have reviewed the prosecutor's "long and expectably hortatory" closing argument (Donnelly v.

De Christoforo, 416 U. S. 637, 647 (94 SC 1868, 40 LE2d 431) (1974)), and do not find that it was "so prejudicial or offensive, or involved such egregious misconduct on the part of the prosecutor as to require reversal of the death sentence on the basis that it was impermissibly influenced by passion, prejudice, or any other arbitrary factor." *Spivey v. State*, 253 Ga. 187, 191 (319 SE2d 420) (1984).

6. In his seventh enumeration, Finney contends the trial court erred by defining in its charge parties to a crime (see OCGA §§ 16-2-20 and 16-2-21), conspiracy (see OCGA § 16-4-8), and by charging: "[A]ny act done in pursuance of that association by any one of the associates would, in legal contemplation, be the act of each of them."

The evidence showed that Finney and Westbrook, acting in concert, had kidnapped and murdered two elderly women. It showed that Finney had killed one of the women while Westbrook had killed the other.

One of the statutory aggravating circumstances alleged by the state was that the murder of one victim was committed while the offender was engaged in the commission of the murder of the other victim. See OCGA § 17-10-30 (b) (2). The state contends that this statutory aggravating circumstance is supported by evidence that Finney directly murdered one victim and was a party to the murder of the other and argues that the complained-of charge was necessary to explain to the jury the legal basis of this contention. We agree.

Finney, however, contends the effect of this charge was to convey to the jury that the acts of Westbrook became the acts of Finney for purposes of determining the punishment to be imposed as well as for purposes of determining whether the § (b) (2) statutory aggravating circumstance should be found. He contends the charge deprived him of his right to ask the jury to distinguish between his acts and those of Westbrook in deciding the degree of culpability and the appropriateness of the death penalty for Finney.

We are unable to agree that the court's charge, viewed in its entirety, had that effect. "In passing upon the merits of this enumeration of error, we do not consider fragments of the charge in isolation. Instead, we must examine the charge as a whole to see whether reasonable jurors were properly informed of the law. [Cits.]" *Felker v. State*, 252 Ga. 351, 381 (16) (314 SE2d 621) (1984).

The portion of the charge about which Finney complains followed an instruction on direct and circumstantial evidence and the credibility of witnesses. It preceded the court's charge on reasonable doubt, the alleged statutory aggravating circumstances, and the necessity of finding at least one such aggravating circumstance before the death penalty could be imposed. After instructing the jury on all the foregoing matters, the court charged as follows:

"Ladies and gentlemen, I charge you that mitigating circum-

stances are those which do not constitute a justification or excuse for the offense for murder, but which in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame of the defendant, or otherwise offering a basis for not imposing the death penalty.

"I charge you that a jury must be allowed to consider on the basis of all relevant evidence, not only why a death sentence should be imposed, but also why it should not be imposed. The jury should consider as a mitigating factor any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

"I charge you that the jury is empowered to consider as mitigating anything they found to be mitigating without limitation or definition.

"I charge you that the jury is not required to find any mitigating circumstance in order to make a recommendation of mercy that is binding on the trial court.

"I charge you that youth may be considered as a relevant mitigating factor. But youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage.

"I further charge you, members of the jury, that even if you find beyond a reasonable doubt that the State has proven the existence of one or more of the statutory aggravating circumstances as related to either one of the Counts given you in this charge, you are nonetheless not required to recommend that the accused be put to death. You shall consider the mitigating circumstances presented by the evidence, if any. You may, if you see fit, and this is a matter entirely within your discretion, provide for a life sentence for the accused because of any mitigating circumstance presented by the evidence. You also may recommend mercy, that is, a life sentence for any reason satisfactory to you or for no reason, whether or not you find the existence of a mitigating circumstance from the evidence presented to you in this case.

. . .

"Now, generally speaking, the defendant by way of evidence has offered certain mitigating circumstances, such as age, difference in age, the amount and degree of culpability in the performance or commission of the acts which were given, and the fact that he has been . . . in special education study for the greater portion of his life. Those are not all, but just a few. You may consider those, if you find them, and I am just using these as examples to be considered by you as mitigating circumstances. But they are not necessarily . . . mitigating circumstances unless they are found to be so by you, the jury.

"Likewise, you may consider the nature of the killings, the circumstances that existed at the time of the killing and the severity of

the injuries causing the death, as well as all of the acts committed at the time. These may be considered as aggravating evidence or aggravating circumstances. But these are not necessarily aggravating circumstances unless you find them to be so.

"Now, the foregoing that I have offered you merely as examples of mitigating and aggravating circumstances in evidence, but they do not in any way limit you in what you may consider to be aggravating or mitigating circumstances for whatever reason you believe.

"Now, ladies and gentlemen of the jury, I charge you that life imprisonment may be imposed even though statutory aggravating circumstances are found to exist. Under no circumstances conceivable to you, the jury, do you have to render a death penalty recommendation."

The court's charge did not improperly restrict the jury's consideration of mitigating circumstances. The charge as a whole "fully and fairly explained aggravation, mitigation, the choice to be made between life and death, and the jury's responsibilities in that regard." *Romine v. State*, 251 Ga. 208, 216 (305 SE2d 93) (1983).

7. The jury found as statutory aggravating circumstances that each murder was committed during the commission of the capital felony of kidnapping with bodily injury and that the murders were outrageously or wantonly vile, horrible or inhuman in that they involved torture, depravity of mind, or aggravated battery to the victims. See OCGA § 17-10-30 (b) (2) and (b) (7). The jury also found as a statutory aggravated circumstance that one murder was committed during the commission of the other. OCGA § 17-10-30 (b) (2); *Putman v. State*, supra, 251 Ga. at 613-614.

The evidence showed that Finney and co-defendant Westbrook each raped an elderly woman, kidnapped her and her friend, drove them to a secluded area, and then killed them. Although armed, Finney and Westbrook chose to beat the women to death with a two-by-four.

Each of the women clearly suffered intentionally-inflicted and serious physical and psychological abuse prior to their deaths. *Phillips v. State*, 250 Ga. 336 (6) (297 SE2d 217) (1982). The evidence amply supports the jury's findings of the § (b) (7) statutory aggravating circumstance. *West v. State*, 252 Ga. 156, 161-162 (313 SE2d 67) (1984). Compare, *Whittington v. State*, 252 Ga. 168 (313 SE2d 73) (1984).

The remaining statutory aggravating circumstance is clearly supported by the evidence. OCGA § 17-10-35 (c) (2); *Waters v. State*, 248 Ga. 355 (11) (283 SE2d 238) (1981).

8. We find that the sentences of death imposed in this case are neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the appendix support the death

penalty in this case. Finney's fifth enumeration of error is meritless.

9. We conclude that the sentences of death were not imposed under the influence of passion, prejudice or other arbitrary factors. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 1984 —
REHEARING DENIED OCTOBER 1, 1984.

*Groover & Childs, Craig M. Childs, G. B. Moore III,* for appellant.

*Joseph H. Briley, District Attorney, Thomas J. Matthews, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

APPENDIX.

*Putman v. State,* 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State,* 250 Ga. 630 (300 SE2d 640) (1983); *Burden v. State,* 250 Ga. 313 (297 SE2d 242) (1982); *Rivers v. State,* 250 Ga. 303 (298 SE2d 1) (1982); *Rivers v. State,* 250 Ga. 288 (298 SE2d 10) (1982); *Mathis v. State,* 249 Ga. 454 (291 SE2d 489) (1982); *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981); *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980); *Holton v. State,* 243 Ga. 312 (253 SE2d 736) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Green v. State,* 242 Ga. 261 (249 SE2d 1) (1978); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974).