## 45572. MORRISON v. THE STATE.
(373 SE2d 506)

CLARKE, Presiding Justice.

On January 9, 1987, Earnest Morrison raped and murdered the

---

wife of his uncle by marriage (his uncle's first wife was Morrison's aunt). Morrison, a drifter, had stayed with the couple for a few days until his uncle told him he would have to get a job or leave. The day he was supposed to leave he waited until the uncle left for work and then attacked the wife. According to Morrison, he was going to tie her up with duct tape and rape her, but she struggled so hard and was so strong that he wound up killing her. He took her car and some valuables and went to Tennessee, where he was arrested.[1]

Morrison previously had committed a similar crime in South Carolina, except that the victim was not killed: He was staying with a couple; the husband told Morrison that he would have to get a job or leave; when he went to work, Morrison tied up the wife with duct tape, raped her, and stole her car and some valuables.

Morrison was abandoned by his mother soon after birth and spent his childhood in and out of, and running away from, foster homes and juvenile detention centers. According to Dr. Everett Kuglar, one of the two psychiatrists who examined Morrison pursuant to the trial court's order:

> [Morrison] learned to fend for himself on the streets, apparently surviving in part by becoming somewhat self-sufficient and maybe taking other people's property. He immediately began to get in trouble with the legal system [from the time he was six years old] and from late teenage on he spent almost all of his time incarcerated at one place or another in the legal system. I think he's probably never had any sort of decent human interaction with anyone over a period of more than a few days. He turned to drugs or probably alcohol, although he indicates it's been mostly drugs, as a way of solving whatever conflicts and problems he had. . . .

Both psychiatrists who evaluated Morrison concluded that he has an anti-social personality and that, given his history, his prospects for rehabilitation are poor.

Attorney O. L. Collins was appointed to represent Morrison. A month before trial, Morrison wrote a letter to the judge in which he admitted his guilt and stated that he had become a Christian. He was afraid that if he was given an opportunity he would "break out and

---

[1] The crime was committed on January 9, 1987. Morrison was indicted May 12, 1987. Morrison pled guilty and a sentencing hearing was conducted on October 30, 1987. The trial court delivered its verdict on November 2, 1987. A notice of appeal was timely filed, and the case was docketed in this court on March 14, 1988. The case was orally argued May 10, 1988.

kill again," and he asked the court to give him a death sentence to prevent that from happening.

Morrison also contacted Tennessee authorities about conversations he had with a cellmate in Tennessee while awaiting his return to Georgia. Ultimately, he testified for the State of Tennessee at the former cellmate's murder trial. The chief investigating officer in the Tennessee case testified in this case that Morrison's information and testimony were crucial in obtaining a conviction and death sentence for the cellmate.

After receiving Morrison's request to be executed, the trial judge appointed a second attorney, Percy J. Blount, to assist Collins with the case.

On October 30, 1987, Morrison, represented by Collins and Blount, entered a plea of guilty to murder, rape, armed robbery, theft by taking and escape. The trial court conducted a hearing and accepted the plea. After a non-jury sentencing proceeding, the trial court found the presence of statutory aggravating circumstances, see OCGA § 17-10-30, and sentenced Morrison to death on the murder count.

1. Morrison's appellate brief was filed by attorney Blount, who now contends that Morrison's guilty plea was involuntary because he "had come under the influence of . . . attorney [Collins] in some manner in making his decision." We have reviewed the transcript of the plea hearing. The evidence presented at the hearing, including Morrison's own testimony, fully supports the court's determination that the plea of guilty was voluntarily entered. Compare *Blackledge v. Allison*, 431 U. S. 63 (97 SC 1621, 52 LE2d 136) (1977); *Moya v. Estelle*, 696 F2d 329 (5th Cir. 1983).

2. Morrison withdrew his motion to suppress, and has waived his right to raise the issue. Compare *Curry v. State*, 255 Ga. 215 (1) (336 SE2d 762) (1985). Moreover, we note that he would not have had standing in any event to contest the search of an automobile that he stole. *Sanborn v. State*, 251 Ga. 169 (1) (304 SE2d 377) (1983).

3. No evidence was presented by the defense at the sentencing phase of the trial, at Morrison's request.[2] Moreover, attorney Collins, stating that his client "has a right to choose and ask for [a death sentence] if he wants to," and that Collins owed his client "the duty as his representative to . . . take his side of it," argued *in favor* of a death sentence. Such an argument is unusual, because criminal defendants usually seek to *avoid* a death sentence, not to have it im-

---

[2] The chief investigating officer in the Tennessee murder case had been subpoenaed by Morrison's attorneys, however, and although they did not call the witness, citing Morrison's desire not to present evidence in mitigation, the court called him to the stand as the court's witness to testify about Morrison's cooperation and assistance in the Tennessee case.

posed. Compare, however, *Gilmore v. Utah*, 429 U. S. 1012 (97 SC 436, 50 LE2d 632) (1976). See also *Felde v. Butler*, 817 F2d 281 (5th Cir. 1987); *People v. Deere*, 710 P2d 925 (Cal. 1985).

Although no issue has been raised in this regard on appeal, we are required by law to review the record in a death penalty case and determine whether the death sentence was "imposed under the influence of passion, prejudice or any other arbitrary factor." OCGA § 17-10-35 (c) (1).

It has been noted that an attorney is not merely the client's "alter ego" functioning only as the client's "mouthpiece." ABA Standards for Criminal Justice, The Defense Function, Commentary to Standard 4-1.1 at 4-9. The lawyer is an "independent . . . professional representative," not an "ordinary agent." Id. Counsel has a duty to investigate and to provide informed legal advice to the client and "first must evaluate potential avenues and advise the client of those offering possible merit." *Thompson v. Wainwright*, 787 F2d 1447, 1451 (11th Cir. 1986). However, after having been informed, the defendant, and not his attorney, makes the ultimate decision about, for example, what line of defense to pursue, *Foster v. Strickland*, 707 F2d 1339, 1343 (11th Cir. 1983), whether or not to testify in his own behalf, *Thompson v. Wainwright*, supra at 1452, whether or not to plead guilty, *Kemp v. Leggett*, 635 F2d 453, 454 (5th Cir. Unit B, 1981), and whether or not to present witnesses in mitigation, *Mitchell v. Kemp*, 762 F2d 886, 889-90 (11th Cir. 1985).

A defendant may insist on representing himself. *Faretta v. California*, 422 U. S. 806, 820 (95 SC 2525, 45 LE2d 562) (1975). Even if he is represented by an attorney, the attorney "is still only an *assistant* to the defendant and not the master of the defense." *Mulligan v. Kemp*, 771 F2d 1436, 1441 (11th Cir. 1985). We conclude that where a properly-informed, competent defendant insists that he prefers a death sentence to life imprisonment, his attorney does not violate any right of the defendant by attempting "to comply with his client's wishes," *Foster v. Strickland*, supra, 707 F2d at 1343, and by arguing to the sentencer in favor of a death sentence.[3]

However, although the defendant may have a right to present his personal desires to the court, those desires are not controlling. As the trial court recognized, its responsibilities are much broader than the defendant's own wishes, and the imposition of a death sentence would be authorized only when, as here, the court has satisfied itself (1) that the existence of at least one statutory aggravating circumstance has been proven beyond a reasonable doubt, and (2) considering all the

---

[3] We note, however, that "[a]n attorney has expanded duties when representing a client whose condition prevents him from exercising proper judgment." *Thompson v. Wainwright*, supra at 1451.

facts and circumstances presented to the court, the death sentence is the appropriate punishment.

In view of the concern for reliability inherent in our death-penalty procedures, including the automatic review by this court, see OCGA §§ 17-10-2; 17-10-30 and 17-10-35, the trial court in a case like this may have an obligation to conduct an independent investigation into the possible existence of evidence in mitigation. Compare *People v. Deere*, supra, 710 P2d at 934-35 (Broussard, J., concurring). We need not decide this question today, because the trial court here undertook to inform itself about Morrison's background and evidence in mitigation, calling as a court's witness the investigator from Tennessee (fn. 2, supra), and questioning the two psychiatrists who had evaluated Morrison, especially Dr. Kuglar, whom the court questioned at length. In addition, the court reviewed Morrison's parole file, which included, among other things, the results of an earlier psychological evaluation.

The court heard the evidence on October 30, 1987. On November 2, 1987, the court announced its sentencing decision as follows:

> [Morrison] entered his guilty plea in open court to the charges of murder, armed robbery, rape, theft by taking of motor vehicle and criminal attempt to escape on the 30th day of October, 1987. The defendant waived his right to a jury determination and submitted to the hearing and determination of the Court alone the issue of punishment in the second phase of the trial, which ensued following the acceptance of his guilty plea. After receiving and considering all the evidence and argument of counsel, from both state and accused in open court on the 30th day of October, 1987, the Court makes the following findings as to aggravating circumstances and mitigating or extenuating circumstances.

> Aggravating circumstances: The State had served notice of three aggravating circumstances. Taking them in the order in which they were notified, the order in which they were noticed to the accused: OCGA § 17-10-30 (b) (2). The Court finds beyond a reasonable doubt that the murder of Edna Mary Griffin was committed by the defendant, Earnest Ulysses Morrison, while he was engaged in the commission of another capital felony, to wit, the armed robbery of Edna Mary Griffin. Number two, OCGA § 17-10-30 (b) (2). Again, the Court finds beyond a reasonable doubt that the murder of Edna Mary Griffin was committed by the defendant, Earnest Ulysses Morrison, while he was engaged in the commission of another capital felony, to wit, the rape of Edna Mary

Griffin. And the third aggravating circumstance, OCGA § 17-10-30 (b) (9). The Court finds beyond a reasonable doubt that the murder of Edna Mary Griffin was committed by Earnest Ulysses Morrison, a person who had escaped from . . . a place of lawful confinement to wit, the common jail of Aiken County, South Carolina, where he was lawfully confined.

[M]itigating and extenuating circumstances: The Court finds the following extenuating facts and circumstances . . . which do not constitute a justification or excuse for the offense but which in fairness and mercy, the Court considers as extenuating the degree of moral culpability and blame of the defendant, Earnest Ulysses Morrison. And while awaiting trial on these charges, the defendant, Earnest Ulysses Morrison, advised and assisted the Marion County, Tennessee Sheriff's Department in the prosecution of a violent murder and rape involving the death of a fourteen-year-old girl. The defendant had obtained the important information while incarcerated in Tennessee awaiting extradition to Georgia. The help he provided resulted in the conviction of an accused in that jurisdiction. The Marion County authorities acknowledged that without the help and assistance of the defendant, Earnest Ulysses Morrison, in providing information and later testimony in the trial, that a conviction would have been much less probable. The defendant, Earnest Ulysses Morrison, offered his help voluntarily without any hope of reward or benefit and out of his own desire to assist in that prosecution. In further mitigation and extenuation the Court finds beyond a reasonable doubt that Earnest Ulysses Morrison is a product of a disintegrated and chaotic family existence. He was rejected by his natural mother shortly after his birth and spent his formative years residing in a series of family homes, foster homes and later juvenile detention centers in the state of Ohio. His infancy and early childhood were years of abuse, abandonment and rejection by those to whom a child would and should naturally look for nurture, love, support and kindness. His early adolescent years were filled with angry, irresponsible and antisocial behavior. His juvenile court record is lengthy. He was declared by age 11 to be an unruly and incorrigible child, uncontrollable by the community, the school system and the state of Ohio. From the age of six years Earnest Ulysses Morrison has been in constant serious trouble with the authorities, ranging from bicycle theft at age 6 to breaking and entering at age 11 to grand

larceny with firearm at age 11. Since his early teens he has been a heavy abuser of a large array of drugs and narcotics. He was arrested and subsequently convicted of felony auto theft in Jefferson County, Georgia at the age 17. He was arrested and subsequently convicted of criminal abduction of a 7-year-old girl in Ohio at age 19. Earnest Ulysses Morrison is a product of a chaotic and destructive infancy and childhood, was physically and emotionally abused, abandoned and rejected during those years and developed into an angry, sullen, impulsive adolescent and further into a violent and dangerous adult.

Having found the above statutory aggravating circumstances beyond a reasonable doubt, and taking into consideration the mitigating and extenuating circumstances as noted above, the verdict of the Court is that Earnest Ulysses Morrison suffer death by electrocution as punishment for his conviction on the charge of the murder of Edna Mary Griffin.

The evidence supports the trial court's finding of statutory aggravating circumstances, OCGA § 17-10-35 (c) (2), and we find that the death sentence was not imposed under the influence of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1).

4. Morrison's death sentence is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 10, 1988.

*Glover & Blount, Percy J. Blount, O. L. Collins,* for appellant. *Sam B. Sibley, Jr., District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

*Williams v. State,* 258 Ga. 281 (368 SE2d 742) (1988); *Ford v. State,* 255 Ga. 81 (335 SE2d 567) (1985); *Allen v. State,* 253 Ga. 390 (321 SE2d 710) (1984); *Finney v. State,* 253 Ga. 346 (320 SE2d 147) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982); *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Stevens v. State,* 245 Ga. 583 (266 SE2d 194) (1980); *Burger v. State,* 245 Ga. 458 (265 SE2d 796) (1980); *Hardy v. State,* 245 Ga.

272 (264 SE2d 209) (1980); *Gates v. State*, 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State*, 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State*, 243 Ga. 291 (253 SE2d 729) (1979); *Ruffin v. State*, 243 Ga. 95 (252 SE2d 472) (1979); *Johnson v. State*, 242 Ga. 649 (250 SE2d 394) (1978); *Morgan v. State*, 241 Ga. 485 (246 SE2d 198) (1978); *Moore v. State*, 240 Ga. 807 (243 SE2d 1) (1978).

