### 73121. BERNYK v. THE STATE.
(355 SE2d 753)

BENHAM, Judge.

Richard Bernyk appeals from his conviction and sentence for armed robbery.

1. Appellant contends the trial court erred in denying his motion to dismiss based on an alleged violation of OCGA § 42-6-20, Art. IV (e), Interstate Agreement on Detainers which provides in pertinent part: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V (e) hereof, such

indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same prejudice."

The evidence adduced at trial showed that appellant, while in federal custody in Tennessee, filed a motion for disposition of his cases pursuant to OCGA § 42-6-20, Art. III (a). Thereafter, on March 4, 1985, he was brought to Fulton County Georgia where he entered pleas of guilty to two armed robberies. On April 8, 1985, he was returned to federal authorities in Tennessee. Subsequent to his return, appellant was indicted for armed robbery by the DeKalb County Grand Jury in Georgia. On June 21, 1985, appellant filed another request for disposition of his cases. He was again returned to Georgia; and on October 15, 1985, a jury in DeKalb Superior Court convicted him for the offense of armed robbery. Appellant argues since he was returned to federal custody by Georgia prior to the disposition of his DeKalb County charges, he is entitled to dismissal of his indictment in DeKalb County pursuant to OCGA § 42-6-20, Art. IV (e). We disagree.

Art. III (d) of the Interstate Agreement on Detainers provides: "Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all *untried indictments*, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed." (Emphasis supplied.)

The evidence, including appellant's testimony, is abundantly clear that the DeKalb indictment was not returned until April 8, 1985, which was over a month after the plea had been entered in Fulton County. Therefore, no indictment upon which trial could be had was pending in DeKalb County, Georgia when appellant was in the State. Moreover, appellant, himself, requested disposition of his case in DeKalb County. "The purpose of the statute is to insure speedy trial on pending charges before staleness and difficulty of proof set in." *Suggs v. Hopper*, 234 Ga. 242, 243 (215 SE2d 246) (1975). When the second request was filed, the DeKalb County case was dealt with expeditiously and in a manner inoffensive to the Interstate Agreement on Detainers. As appellant received the relief he sought, he has no cause to complain. This enumeration is without merit.

2. In his second enumeration of error, appellant contends the trial court erred in the admission of evidence of three other separate armed robberies. " 'When one is on trial charged with the commission of a crime, proof of a distinct, independent, and separate offense is never admissible, *unless there is some logical connection between the two*, from which it can be said that proof of the one tends to establish

the other.' [Cit.] 'Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct. [Cits.]'" *Wright v. State*, 165 Ga. App. 790 (3) (302 SE2d 706) (1983). (Emphasis supplied.)

The evidence in the case sub judice shows that on September 18, 1984 a young woman while exiting her car at the YMCA parking lot on Clairmont Road was approached by appellant who brandished a gun and demanded her car. She complied, and appellant drove away in her vehicle.

The three similar transactions which were admitted against appellant also involved armed robberies committed in close proximity to the crime charged, and all were committed within seven days. The first and second extrinsic crimes introduced at trial were the armed robberies of the same bank located on North Ponce De Leon which is within minutes of the YMCA where the armed robbery of the young woman took place. The first time the bank was robbed was on September 18, 1984, the same day and within ten minutes after the robbery at the YMCA. The description given by the bank employee of the car in which appellant used to flee the bank robbery was identical to the stolen vehicle taken from the parking lot of the YMCA. Also, the bank employee's description of the small handgun used in the bank robbery matched the description of the handgun used in the armed robbery at the YMCA. The bank was robbed again by appellant on September 24, 1984. Appellant pleaded guilty to both of these robberies. The third extrinsic crime introduced was that of an armed robbery of a grocery store located on N. Highland Avenue. That armed robbery was committed on September 14, 1984, four days before the armed robbery at the YMCA. The grocery store is also located within minutes of the YMCA.

"In view of the similarities between the crime charged and the independent crimes, evidence of the latter was admissible to show common motive, plan or scheme." *Wright v. State*, supra at 791.

*Judgment affirmed. Deen, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 1. However, I cannot agree with Division 2 insofar as it concludes at the end that the evidence of the other crimes was admissible because "similar." The crime for which Bernyk was on trial was the armed robbery of a young woman in a parking lot in which the property taken was her car. The independent crimes were armed robberies of establishments, a bank (twice) and a retail

store, for cash. The indicia of sameness which the majority articulates do indicate clearly, however, that the crimes were logically connected.

The whole course of criminal conduct occurred between September 14 and 24, in the same locality. In at least one of the bank robberies, the car which was the object of the robbery on trial was used. Thus, as highlighted by the majority at the outset of Division 2, there was a logical connection between the crime for which Bernyk was on trial and the three other incidents which were a part of his spree. As such, even if they were not similar, they were admissible as sufficiently connected.

The Supreme Court has stated the exception to the rule of inadmissibility of separate crimes clearly: "The *only* separate crimes which are admissible are those that are either similar or logically connected to the crime for which defendant is being tried. Crimes which are not similar or which are not logically connected to the crime for which defendant is being tried should be excluded from evidence. Proof of crimes which *are* similar or *are* closely connected to the crime charged *does* tend to establish the crime charged." *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980).

Thus, either similarity or, as we have here, close connection in terms of such factors as time and place, are two categories of those logically connected crimes which may be considered admissible. As to the latter, see, e.g., *Putman v. State*, 251 Ga. 605, 608 (2) (308 SE2d 145) (1983).

In addition, at least a certain portion of one of the bank robberies was admissible for the reason that it was inextricably tied to the car robbery victim's identification of defendant. She first identified him as her robber when she saw a photo monitor surveillance of the bank robbery on television.

We must always be vigilant, as the court is here, to carefully draw the distinction between which other crimes are admissible and which are not, in order to steadfastly abide by the traditional mandate codified in OCGA § 24-2-2. Otherwise we will allow an inching over into a practice where a defendant's past behavior is routinely admitted and we have trials by dossier rather than trials limited to the person's relationship to simply the act with which he is charged.

In this vein, too, the purpose for which the other crimes are admitted should be articulated. OCGA § 24-2-2 states that they are "irrelevant" to start with, "unless the nature of the action (on trial) involves such character (of defendant) and renders necessary or proper the investigation of such (other) conduct." In this case, as in many, the district attorney never stated what specific purpose this evidence was to serve. Nor was it required by the court to be narrowed or articulated. What issue or issues were at stake for which the evidence was relevant was never identified. Instead, the whole list of permissi-

ble purposes was assumed, in justification for the admission of the evidence, despite defendant's initial attempt to raise the question.

The evidence of other crimes is not rendered admissible simply because it meets the two criteria set out in *French v. State*, 237 Ga. 620, 621 (229 SE2d 410) (1976). It must be relevant to an issue. See *Walraven v. State*, 250 Ga. 401, 407 (4b) (297 SE2d 278) (1982); see also *Hunter v. State*, 177 Ga. App. 326, 327 (339 SE2d 381) (1985), Beasley, J., dissenting. Otherwise it is forbidden. See also OCGA § 24-9-20 (b).

DECIDED MARCH 18, 1987 —
REHEARING DENIED MARCH 27, 1987 — 

*Lawrence L. Schneider*, for appellant.

*Robert E. Wilson, District Attorney, Susan Brooks, John H. Petrey, Assistant District Attorneys*, for appellee.