## A93A2138. HILL v. THE STATE.
(441 SE2d 863)

BEASLEY, Presiding Judge.

Hill was charged in a multi-count indictment with aggravated assault with intent to commit robbery (two counts), OCGA § 16-5-21 (a) (1); aggravated assault with a deadly weapon (three counts), OCGA § 16-5-21 (a) (2); armed robbery (two counts), OCGA § 16-8-41 (a); possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b) (1); possession of a firearm by a convicted felon, OCGA § 16-11-131 (b); and simple battery, OCGA § 16-5-23. He was tried jointly with co-defendant Christopher Houser. Hill appeals from the judgments of conviction and sentences entered on a jury verdict of guilty as to all counts, and from the denial of his motion for new trial. We affirm.

Mr. and Mrs. Harrell were at home at 11:00 p.m. on the evening of August 4, 1991, when Mrs. Harrell heard a noise at the back door. They left the house together through the carport door and walked into the back yard to investigate. Mr. Harrell shined a flashlight in the direction of the noise and they observed Hill with his coat pulled up, hiding behind the house. Mr. Harrell told his wife to run into the house, but before she could, Hill grabbed her. He was carrying a "real shiny" gun, which he pointed at her. Mrs. Harrell testified that Hill, "Hit me with [the pistol], knocked me about 10 feet. . . . He told me he would blow my brains out." Mr. Harrell testified that he was hit in the head and dragged into the house, and when "I got to, I was bloody all over, and I had a gash in my head . . . and a man was standing with a shiny pistol saying he was going to blow my brains out." He identified Hill as the man wielding the pistol. Defendant demanded money which Mrs. Harrell gave him.

The house was well illuminated and both Mr. and Mrs. Harrell observed the perpetrators for at least 30 minutes. They both described Hill as tall, wearing a pullover jacket with a hood on his head. Mr. Harrell described the second perpetrator (Houser) as being short and husky. Both victims recognized him because he had purchased eggs from them at their home several days earlier.

Mr. Harrell testified that he identified defendant's photograph from a photographic display at the sheriff's department as "the tall one . . . [t]he one that held the gun in my face." Mrs. Harrell also identified both perpetrators from a series of photographs shown to her at the sheriff's department. Both victims also identified photographs of Hill and his co-defendant from a display shown to them at their home, but were unable to identify defendants' photographs at trial. Both victims unequivocally identified their two assailants in the courtroom as the defendants on trial.

1. Appellant contends the court erred in allowing evidence of his

involvement in another armed robbery on the ground that there was insufficient showing of similarity.

Through an offer of proof, the State established that at about 10:00 p.m., on the night following the attack on the Harrells, the proprietor of a convenience store was preparing to close for the evening when defendant entered wielding a small chrome-plated pistol and demanding cash, which was given. The victim observed defendant closely and later without any hesitation identified his photograph at the police station. He had described the perpetrator's clothing to the police as consisting of a baseball cap and a pair of black shorts with a white and gray striped pattern along the sides. The witness was shown a pair of shorts which had been seized from defendant's bedroom on August 9, and he identified them as the pair Hill had worn during the armed robbery.

Defendant objected to the admissibility of the independent evidence on the ground that it is factually dissimilar. Finding sufficient indicia of similarity, the court ruled the evidence admissible. The jury was later instructed, after the court advised generally what limited purpose evidence of other transactions is admissible for, that "you are strictly limited in your consideration of the evidence as to the state of mind; for example, the knowledge or intent of a defendant." The extrinsic evidence was sufficiently similar in degree to show some logical connection between the two (both occurring in close proximity as to time and place and involving nighttime armed robbery with a similarly-described gun in which cash was taken). See, e.g., *Lynd v. State*, 262 Ga. 58, 64 (12) (414 SE2d 5) (1992); *Berynk v. State*, 182 Ga. App. 329 (2) (355 SE2d 753) (1987) (Beasley, J., concurring specially). USCR 31.3 (E) allows the State to introduce evidence of "similar transactions or occurrences which . . . are immediately related in time and place to the charge being tried, as part of a single, continuous transaction." The evidence was admissible, based on these and related authorities.

Defendant's other ground of objection, argued in his brief, is not embraced within a fair reading of the enumeration of error and is not addressed. *Loyd v. State*, 202 Ga. App. 1, 2 (1) (c) (413 SE2d 222) (1991).

2. Defendant contends that the court abused its discretion in allowing the State's chief investigator to remain in the courtroom as an exception to the sequestration rule, even though he did not testify as the first witness.

At a *Jackson v. Denno* hearing prior to trial, defendant invoked the rule of sequestration and requested that it include Sergeant Lowry. The State advised the court that he is chief investigating officer and requested that he be permitted to remain in the courtroom. The court replied, "I will probably allow that then, especially if he

goes first." The State acknowledged that it expected to call him as its first witness but that he would be recalled at the conclusion of the evidence and that his presence was required to assist in the prosecution which was expected to include "17 witnesses and 23 pieces of evidence." The court made no specific ruling at that time. The objection was renewed and overruled prior to the presentation of trial evidence.

Defendant is incorrect in interpreting the court's original statement as allowing the investigator to remain only if he were to testify first. The State explained the need for his presence throughout the trial even though he was expected to be recalled at the conclusion of the evidence. The court accepted the State's explanation and allowed him to remain. We find no abuse of discretion. See *Disby v. State*, 238 Ga. 178 (1) (231 SE2d 763) (1977); *Jarrell v. State*, 234 Ga. 410 (6) (216 SE2d 258) (1975); *Thayer v. State*, 189 Ga. App. 321 (3) (376 SE2d 199) (1988); *Mathews v. State*, 183 Ga. App. 224 (1) (358 SE2d 639) (1987).

3. Defendant contends that the court improperly admitted into evidence Mr. Harrell's identification of him in a photographic display.

At the *Jackson v. Denno* hearing Mrs. Harrell explained that she was first shown a series of six or eight photographs at the sheriff's department on the day after the attack and that she was able to select Hill's photograph "immediately." She was not told that police had a suspect in custody or that his photo was among the ones being shown her.

She and her husband were later shown a series of photographs at their home. The couple separately viewed the photos. Mrs. Harrell testified: "I don't know who he picked, and he didn't know who I picked." She selected Hill's photograph "at once." She had the opportunity to observe the perpetrators during the commission of the crime under well lighted conditions, for "[a]t least 30 minutes or maybe longer. It seemed like eternity."

Mr. Harrell testified that he identified the two assailants from a book of photographs at the sheriff's department, and again from a series of photographs shown to him at his home.

The investigating officer testified that Mr. Harrell did not make a positive identification at the sheriff's department, but that he did identify Hill from the photographic display shown to him at his home. The State offered into evidence only Mr. Harrell's identification of Hill from the photographic display shown at his home, as that was the only "clear-cut" identification of Hill. The court allowed testimony of that identification to be heard by the jury.

Hill contends that the identification of him by Mr. Harrell at his home was tainted because his was the first photo shown to the victim. Assuming arguendo that an objection on this ground was properly

raised below, it is nevertheless without merit. The photographic display was not impermissibly suggestive so as to taint the in-court identification. See *Denegal v. State*, 193 Ga. App. 238 (1) (387 SE2d 434) (1989). The victims were shown a series of photographs from which they selected Hill without any hesitation. The in-court identification was likewise certain. There is no indication of any suggestion by police that Hill was the perpetrator which would render the pre-trial identification procedures impermissibly suggestive.

4. Defendant contends that the court erred in overruling his motion to suppress and admitting into evidence a pair of shorts that had been seized from the bedroom he occupied in his mother's home.

Hill filed a pre-trial motion to suppress the evidence seized during a warrantless search of his mother's residence; a suppression hearing was held during trial prior to the introduction of the evidence.

Police requested permission from Mrs. Hughes (Hill's mother) to search her residence for fruits of the crime. She agreed, signed a written waiver and was present during the search. When asked whether defendant pays rent, Mrs. Hughes testified: "Well, he gives me money, yes. He gives me 50, $60. . . . Every week he gets paid." She stated that she did not have permission to enter defendant's room and that she "didn't go in there too often."

The officers involved in the search were investigating both the Harrell robbery and the convenience store robbery. They seized two pairs of tennis shoes and a pair of black shorts with white stripes down the side from defendant's bedroom. The shoes were taken in connection with the Harrell robbery but apparently were not necessary to that investigation and were returned to Mrs. Hughes. The shorts were taken as evidence in the convenience store robbery.

Assuming arguendo that the search of Hill's bedroom and seizure of the shorts were constitutionally impermissible, introduction of that evidence to demonstrate his participation in the convenience store robbery was harmless error with respect to the crimes being tried. Even in the context of the similar offense, the evidence was merely cumulative of the proprietor's positive identification of Hill as the perpetrator. (See Division 1, supra.) To identify also his clothing did not add materially more to the proof that it was defendant who committed the similar crime.

5. Defendant contends the court erred in overruling his hearsay objection to testimony by the investigating officer of a statement made to police by co-defendant Houser implicating him (Hill) in the convenience store robbery.

Assuming arguendo that the statement was inadmissible hearsay, it was merely cumulative of the victim's positive identification of Hill as the perpetrator of the similar crime.

6. Defendant asserts the general grounds. With respect to the

count charging both defendants jointly with aggravated assault with a deadly weapon consisting of fists, it may reasonably be inferred from the circumstances and injuries described that Mr. Harrell was struck in this manner even though he was not in a position to have seen his assailant. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of each offense ·charged.

7. Defendant challenges his sentence of life imprisonment plus 20 years on the ground that it is excessive.

The sentence was within statutory limits. See OCGA § 16-8-41 (b). " 'This court will not review for legal error any sentence which is within the statutory limits — as in the instant case. (Cits.) Any question as to the excessiveness of a sentence which is within legal limits should be addressed to the sentence review panel, as provided in (OCGA § 17-10-6).' [Cit.]" *Sinkfield v. State*, 262 Ga. 239 (416 SE2d 288) (1992).

Defendant further contends that he was entitled to a pre-sentence investigation by the probation department. He is entitled under OCGA § 17-10-2 (a), and was afforded, a pre-sentence hearing at which he presented evidence and argument in mitigation of punishment. *Jefferson v. State*, 205 Ga. App. 687 (2) (423 SE2d 425) (1992). Whether or not to order a probation report to determine whether defendant's sentence should be suspended or whether he should be placed on probation is within the sound discretion of the trial judge. *Jackson v. State*, 248 Ga. 480, 484 (6) (284 SE2d 267) (1981). See OCGA § 42-8-34 (b). Based on evidence of the severe beatings inflicted on the elderly victims by Hill, the court was not disposed to consider probated or suspended sentences. It was not an abuse of discretion to fail to order a pre-sentence probation report under the circumstances.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 11, 1994 —

*Angie M. Coggins*, for appellant.
*Edward D. Lukemire, District Attorney, Michael J. Moore, Assistant District Attorney*, for appellee.